UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ANTHONY GAY,
    Plaintiff,

vs.                                      01-1210

PATRICK HOBART, et al,
    Defendants.

## ORDER

This cause is before the court for consideration of the plaintiff's motion to proceed informa pauperis on appeal. [d/e 128]

## BACKGROUND

Under 28 U.S.C. § 1915(a)(3), the district court is required to determine if the plaintiff's appeal is taken in good faith. "Good faith" within the meaning of § 1915(a)(3) is not about the plaintiff's sincerity in requesting appellate review. Rather, an appeal taken in "good faith" is an appeal that, objectively considered, raises non-frivolous colorable issues. *See Cruz v. Hauck*, 404 U.S. 59, 62 (1971); *see also Coppedge v. United States*, 369 U.S. 438, 445 (1962). *See also Lee v Clinton*, 209 F.3d 1025 (7th Cir. 2000).

On January 20, 2006, this court indicated that it doubted whether plaintiff's appeal was taken in good faith, and directed the plaintiff to submit a brief stating his grounds for appeal to assist the court in determining the issue. *see Celske v. Edwards,* 164 F.3d 396, 398 (7th Cir. 1999). The plaintiff has now submitted a brief which the court will consider.

On November 3, 2004, the court held a final pretrial hearing in this case and determined that the jury trial should be by video conferencing after considering evidence of the plaintiff's long history of violence and aggressive behavior. *See* January 10, 2004 Court Order. The court instructed the parties to provide copies of their trial exhibits to the clerk of the court on or before December 27, 2004.

On December 29, 2004, the clerk of the court received a letter from the plaintiff stating that correctional officials were refusing to copy his exhibits for trial and that he was "placed on suicide watch" after he cut himself. (Plain Ltr, p. 1). The plaintiff asked the court to issue an order directing correctional officials to copy his documents so he could be prepared for trial.

The court instructed the clerk of the court to contact the Department of Corrections and

1

attempt to obtain copies of his documents in time for the jury trial.  The Department of Corrections informed the clerk of the court that the plaintiff was not in fact on suicide watch. The plaintiff had injured his arm, but the injury was not perceived as life threatening.[1]  In addition, Department of Corrections Official stated that the plaintiff had not made proper requests for his documents to be copied.

The plaintiff did make at least three requests for his documents to be copied which were each denied prior to December 29, 2004.  However, the plaintiff admitted he had numerous legal documents and he had refused to provide a copy of the pretrial order identifying his trial exhibits.  The court notes that the plaintiff is an experienced litigator and is well aware of the procedures that must be filed in order to obtain copies of documents. ( *See Gay v. Spaulding,* 01-1070 and *Gay v. Salzman,* 01-1209 in the Central District of Illinois; *Gay v Zielke,* 01-50448 and *Gay v. Wiegand,* 04-50418 in the Northern District of Illinois; and *Gay v. Lohman,* 96-962, *Gay v. Potts,* 99-367, and *Gay v. Welbourne,* 00-29 in the Southern District of Illinois).

After the plaintiff sent his letter to the court, a paralegal was again sent to the plaintiff's cell in an effort to obtain the documents that needed to be copied for trial.  However, the plaintiff refused to cooperate and became verbally abusive.  The court took judicial notice of two disciplinary reports concerning the plaintiff's conduct and the plaintiff does not deny his action toward the paralegal.  *See* January 4, 2005 Court Order, attachments.

On the day of the trial, the court asked the plaintiff is he was prepared to proceed.  The plaintiff stated that he was not because he did not have copies of his trial exhibits.   The court found that the plaintiff's own misconduct had lead to a failure to comply with the court's order and a failure to obtain copies of his exhibits for trial.   The court found that given the plaintiff's litigation experience, he had  "willfully failed" to make the proper requests to have his documents copied. January 4, 2005 Court Order, p.3.  "Given the plaintiff's long history of physical attacks on correctional staff and his increasingly hostile and threatening conduct, the court will not order correctional officers to make further attempts to obtain the documents from the plaintiff." January 4, 2005 Court Order, p. 3.  The plaintiff's case was dismissed.

## BASIS FOR APPEAL

The plaintiff first states that he should have been allowed to appear in person for his jury trial.  Since the case was dismissed due to the plaintiff's conduct, the case never proceed to trial. Nonetheless, the court notes that a prisoner-plaintiff does not have a constitutional right to be physically present during a civil trial, even if the plaintiff initiated the lawsuit.  *Stone v. Morris*, 546 F.2d 730, 735 (7th Cir. 1976).   The court "must weigh the interest of the plaintiff in

---

[1] The court also observed the injury to the plaintiff's right arm during the video conference on January 3, 2005.

2

presenting his testimony in person, against the interest of the state in maintaining the confinement of the plaintiff-prisoner." *Id.*

The court considered these factors during a January 30, 2004, hearing in which the court heard testimony from the supervisor of the Dixon Correctional Center Psychiatric Unit, Mary Henry. Henry testified that the plaintiff had in excess of 137 assaults, mainly against correctional staff. Eight of those assaults resulted in criminal convictions for Aggravated Battery. When the plaintiff was allowed to attend a court hearing, the plaintiff assaulted a witness. In addition, correctional officials found the plaintiff in possession of the names and addresses of jurors after his trial had concluded.

The court also considered the number of personnel it would take to transport the plaintiff, the number of witnesses within the Department of Corrections, the plaintiff's escape risk and the plaintiff's projected release date in the year 2035.

After consideration of these factors as well as the plaintiff's interest in testifying in person, the court found that there were compelling reasons for not transporting the plaintiff to the courtroom for his trial. Substantial time, resources, and risk could be avoided. The plaintiff would instead be allowed to appear by interactive video conferencing which would allow him to actively participate in the trial and present his testimony directly to the jury.

The plaintiff next contends that the court should have responded to his letter concerning the problems obtaining copies by entering a court order directing the Department of Corrections to make the copies. The plaintiff says instead of a court order, a paralegal was again sent to his cell to obtain his documents. The plaintiff claims he had no idea this was why the paralegal came to his cell and this lead to his verbal abuse. The plaintiff's argument fails.

The plaintiff did not file a proper motion asking for a court order, but instead sent a letter to the court. The plaintiff failed to make proper requests for his documents, and therefore his requests were refused. The clerk of the court still attempted to help the pro se plaintiff by requesting that a paralegal obtain the documents, but the plaintiff chose not to cooperate.

The plaintiff also says the court should have allowed him an alternative on the day of trial, rather than dismissing his case. The court appreciates that the plaintiff is proceeding pro se. However, the plaintiff does have a responsibility to litigate his case and follow the rules within the Department of Corrections to obtain the necessary copies for trial. The plaintiff is an experienced litigator and at no point claims he was not aware of how to obtain copies. The plaintiff willfully chose not to follow the court's order instructing him to provide copies and chose instead to become increasing belligerent and threatening towards employees who were trying to obtain the documents.

The court cannot find any substantial issue meriting relief from this judgement, and the

plaintiff has failed to proffer any reason for the court to doubt this determination within the specified time frame.  Therefore, the court cannot find a good faith basis for appeal.  *See* Court Order of June 24, 2002.  Accordingly, the court denies plaintiff's motions for leave to proceed in forma pauperis and certifies, pursuant to 28 U.S.C. §1915(a)(3), that the appeals are not in good faith.

The Seventh Circuit has determined that if the district court certifies that an appeal is not taken in good faith, the appellant cannot prosecute the appeal in forma pauperis, but must pay the appellate fees of $255 within 14 days.  *See Newlin v. Helman*, 123 F.3d 429, 434 (7th Cir. 1997).  If the plaintiff wishes to contest this court's finding that the appeals are not taken in good faith, he must file a motion with the Court of Appeals seeking review of this court's certification within 30 days after service of this order.  *See* Fed.R.App.P. 24(a).

IT IS THEREFORE ORDERED that plaintiff's motion for leave to appeal in forma pauperis is denied. [d/e 128].   The plaintiff is ordered to remit to the Clerk of the Court the $255 appellate fee within 14 days of the date of this order.  The plaintiff is responsible for ensuring payment of the filing fees as directed by this order, and should ensure that the institution having custody of him transmits the necessary funds.  The obligation to ensure full payment of the filing fees imposed by this order shall not be relieved by release or transfer to another prison.  The plaintiff is under a continuing obligation to inform the Clerk of this Court in writing of any change of address within seven days.  The clerk is directed to submit a copy of this order to the United States Court of Appeals for the Seventh Circuit.

Enter this _____day of May, 2006.

**s\Harold A. Baker**
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE